# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1817-19T3

NEW JERSEY DIVISION
OF CHILD PROTECTION
AND PERMANENCY,

     Plaintiff-Respondent,

v.

D.O.M.,

     Defendant,

and

D.I.,

     Defendant-Appellant,

_____

IN THE MATTER OF THE
GUARDIANSHIP OF X.A.I., a minor.

_____

Submitted November 18, 2020 – Decided  December 16, 2020

Before Judge Sumners and Geiger.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Essex County, Docket No. FG-07-0121-19.

Joseph E. Krakora, Public Defender, attorney for appellant (Lauren Derasmo, Designated Counsel, on the briefs).

Gurbir S. Grewal, Attorney General, attorney for respondent (Sookie Bae, Assistant Attorney General, of counsel; Elizabeth S. Sherwood, Deputy Attorney General, on the brief).

Joseph E. Krakora, Public Defender, Law Guardian, attorney for minor (Meredith A. Pollock, Deputy Public Defender, of counsel; Louise M. Cho, Assistant Deputy Public Defender, of counsel and on the brief).

PER CURIAM

Following a one-day trial on December 17, 2019, the Family Court entered an order that day terminating the parental rights of D.O.M. (Deena)[1] and D.I. (Dave) to their almost five-year-old daughter X.A.I. (Xena). Only Dave appeals that order. We affirm substantially for the reasons stated by the trial judge in his thirty-eight-page oral opinion issued with the order.

We will not recite in detail the history of the Division's involvement with Dave. We incorporate by reference the factual findings and legal conclusions detailed in the judge's opinion. Thus, a summary will suffice.

---

[1] We use pseudonyms or initials to protect the privacy of the child and parents. R. 1:38-3(d)(12). Using first names for ease of reference, we mean no disrespect.

On April 20, 2018, two-year-old Xena was at the home of her babysitter, who was being investigated by the Division of Child Protection and Permanency (the Division) regarding an unrelated matter.[2] Since her birth, Xena was cared for by the babysitter while the parents worked long hours. The babysitter only spoke Twi, a Ghanaian dialect, and a second babysitter who was at the house when the Division was there was unable to disclose Xena's name or Xena's mother's name to the Division investigators. Neither Deena nor Dave spoke Twi. Unable to contact the parents, the Division therefore took custody of Xena under a Dodd removal.[3]

Xena, who has cerebral palsy, showed "no visible signs of abuse or neglect." (Da67; Da206). But the resource parent to whom Xena was taken noted a pungent "odor" emanating from Xena. An exam at St. Barnabas Hospital revealed that an object, which could not be identified, was stuck in her nose, and had caused an odorous infection. The infection was cured with antibiotics.

---

[2] The investigation involved a child who died in the babysitter's care. The cause of the child's death was suspected cardiac arrest, and the babysitter was not charged criminally.

[3] DCPP's removal of a child without a court order, commonly called a "Dodd removal," is authorized by the Dodd Act, which, as amended, is found at N.J.S.A. 9:6-8.21 to -8.82. See N.J. Div. of Youth & Fam. Servs. v. N.S., 412 N.J. Super. 593, 609 n.2 (App. Div. 2010).

In a show cause hearing four days after Xena's removal, the trial court, with Deena and Dave in attendance, determined it was in Xena's best interests to be in the care of the Division, and she was placed in a resource home. The couple had separated prior to or around the time of Xena's birth. The court determined it would not be safe for Xena to live with either parent because the Division could not identify them when Xena was at the babysitter's house. The court was further bewildered by the fact that after contacting the parents, neither could identify the babysitter to the Division's satisfaction. Also, the court determined that neither parent presented the Division with "an appropriate [childcare] plan." The court was furthered dismayed by the fact that "[b]oth parents denied knowledge of the [odorous infection]." Xena has since remained in the Division's custody.

At the guardianship trial, Deena was neither present nor represented by counsel. Dave, who was in detention at the Essex County jail due to pending immigration deportation proceedings, appeared but did not testify.[4] Elizabeth Stilwell, Psy.D., who conducted a psychological examination of Dave and bonding evaluations, was found by the judge to be a credible witness. She testified that placing Xena with Dave was a risk of harm because he "could not

---

[4] As of the date this appeal was submitted, Dave's deportation proceeding was pending before the Third Circuit Court of Appeals.

A-1817-19T3

parent [Xena] now or in the foreseeable future[,]" due to his "difficulty maintaining housing and employment . . . [and] attending visitation and . . . services." She also found his "parenting plan" was "not exactly viable." In addition, she believed his awareness of Xena's "deterioration" while under the babysitter's care and failure to get her "the medical care that she need[ed] . . . call[ed] into question . . . his ability to parent a child who's gone through numerous disruptions. . . ." Furthermore, she believed he had "historically [not] acted in [Xena]'s best interests."

Dave's lack of regular visitation with Xena underscored Dr. Stilwell's opinion that he "lack[ed] the insight into what constitutes adequate parenting." She opined that Xena had an "insecure attachment" to Dave. Even though there was inconsistency regarding the resource parents' – first, W.B. (Willa), then T.H. (Tammy) – respective desire to adopt Xena, Dr. Stilwell stressed adoption was the only option due to Xena's need for permanency and Dave's inability to provide such permanency. She stated that during her bonding evaluation observation, despite some initial hesitation, Xena "generally interacted with the [then] resource parent [Tammy] in a positive manner."

Dr. Allison Strasser Winston, Ph.D., who did not testify, conducted a psychological/parenting evaluation examination of Dave. Her report was

admitted into evidence. Dr. Winston determined that at the time of the evaluation, Dave lacked knowledge allowing him to safely parent Xena. She recommended Dave engage in substance abuse evaluation, individual therapy, and parenting classes.

According to the Division's caseworker Yaneris Nolasco, Dave failed to present a parenting plan for how he would care for Xena and was inconsistent with taking advantage of the services offered by the Division. She stated that the several family friends referred by Dave to take custody of Xena were ruled out by the Division. She also testified that Dave's visitations with Xena were inconsistent following the court's approval of a permanency plan for adoption. She related that the current resource parent Tammy wanted more time to consider adopting Xena. Additionally, Xena's initial resource parent, Willa, renewed her interest in adoption. Xena had been with Willa for over a year, until she requested Xena's removal. Willa felt Xena was taking out her frustrations on Willa's biological son. Nolasco testified that both Tammy and Willa were being assessed as adoption options. The judge found Nolasco's testimony credible.

In his opinion, the judge placed emphasis on Dr. Stilwell and Nolasco's testimony as well as Dr. Winston's evaluation in finding it was in Xena's best

6

interest to terminate Deena and Dave's parental rights. The judge found the parents had substantially delayed permanency for Xena due to their inability to identify the babysitter by last name or provide a plan for Xena if she were returned to one of them. Dave had "been uncooperative with the Division and inconsistent at visits[,]" according to the judge. In addition, Dave "failed to consistently participate and engage in any of the services [the Division offered him and] . . . failed to attend multiple visits with [Xena]." Neither he nor Deena had "complied with services," and their withdrawal from their child is considered harm by our Supreme Court.[5]

Our review of the judge's decision is limited. We defer to the judge's expertise as a Family Part judge, Cesare v. Cesare, 154 N.J. 394, 412 (1998), and we are bound by the judge's factual findings so long as they are supported by sufficient credible evidence. N.J. Div. of Youth & Family Servs. v. M.M., 189 N.J. 261, 279 (2007) (quoting In re Guardianship of J.T., 269 N.J. Super. 172, 188 (App. Div. 1993)). In his comprehensive thirty-eight-page oral opinion, the judge tracks the best interests statutory requirements of N.J.S.A.

---

[5] The judge did not cite a specific case, but he apparently was referring to In re Guardianship of D.M.H., 161 N.J. 365, 379 (1999), where the Court held: "A parent's withdrawal of . . . solicitude, nurture, and care for an extended period of time is in itself a harm that endangers the health and development of the child."

30:4C-15.1(a). In re Guardianship of K.H.O., 161 N.J. 337 (1999); In re Guardianship of D.M.H., 161 N.J. 365 (1999); N.J. Div. of Youth & Family Servs. v. A.W., 103 N.J. 591 (1986). We conclude that the judge's factual findings are fully supported by the record and, considering those facts, his legal conclusions are unassailable.

Defendant contends that the trial judge erred in finding he harmed Xena and would continue to do so in the future. He explains the reliance on the babysitter was in line with his African immigrant community culture to rely on trusted neighbors.[6] He contends there was no need for services to reunify him with his daughter. Lastly, Dave contends because there is no resource parent interested in adoption, there can be no showing that termination of his parental rights will do more harm than good. Those arguments are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E). Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

[6] The Law Guardian argues that Dave failed to raise the role of culture differences before the trial judge, and, thus, the argument should be considered waived. (LGb 17-18). However, "[p]arental rights and ineffective assistance of counsel being matters of great public interest, we have considered the parties' arguments" not raised at trial. N.J. Div. of Youth & Fam. Servs. v. B.H., 391 N.J. Super. 322, 343 (App. Div. 2007).